UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHEN BEECHER, individually and on
Behalf of All Others Similarly Situated, et al.,   **REPORT AND**
                                                    **RECOMMENDATION**
                         Plaintiff,

v.       15-CV-00154-WMS-JJM

TWC ADMINISTRATION LLC,

                         Defendant.
_____

       This action has been referred to me by Hon. William M. Skretny for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [23].[1] Before me are the motion of plaintiff Stephen Beecher for class certification [44], and the motion of defendant TWC Administration LLC ("TWC") for summary judgment [53]. Oral argument was held on May 12, 2016 [71].

       For the following reasons, I recommend that TWC's motion for summary judgment be granted, and that plaintiff Beecher's motion for class certification be denied as moot.[2]

## BACKGROUND

       Plaintiff Beecher alleges proposed class action claims against TWC seeking compensation for pre-shift work, commuting time, and post-shift work under the New York Labor Law ("NYLL"). First Amended Complaint [42], ¶¶ 14-25, 47-64 (Counts 1 and 2). In addition,

---

[1]     Bracketed references are to the CM/ECF docket entries.

[2]     "[W]here the merits of the plaintiffs' claims can be readily resolved on summary judgment . . . a district court does not abuse its discretion by resolving the merits before considering the question of class certification." Reynolds v. Barrett, 741 F. Supp. 2d 416, 425 (W.D.N.Y. 2010) (Larimer, J.), aff'd, 685 F.3d 193 (2d Cir. 2012).

plaintiff Beecher, along with plaintiffs Ryan Dueringer, Lamar Reeves, and Marvin Wilson, asserts individual claims under the NYLL seeking compensation for work allegedly performed during lunch breaks. Id., ¶¶ 26-28, 65-84 (Counts 3 and 4). Finally plaintiffs Beecher, Dueringer, and Reeves (but not Wilson) also seek compensation for work allegedly performed during lunch breaks under the Fair Labor Standards Act ("FLSA"). Id., ¶¶ 85-107 (Counts 5 and 6).

Plaintiffs were formerly employed by TWC as field technicians, who traveled to TWC's various customers' homes to install, disconnect, troubleshoot and repair TWC's cable services. TWC's Memorandum of Law [53-29], p. 4. They were notified of their daily job assignments and customer addresses using a software called "WorkAssure" or "I&R" [referred to collectively as "WorkAssure"]. TWC's Statement of Undisputed Facts [53-1], ¶6; Plaintiffs' Statement of Undisputed Facts [67-1], ¶6.

**Proposed Class Claims**

Plaintiff Beecher's proposed class claims arise from his participation in TWC's "Start From Home" Program ("SFH Program"). First Amended Complaint [42], ¶ 34. *See* Agreement executed by Beecher on February 18, 2010 [53-20], p. 7 of 15.[3] Under the SFH Program, Beecher and other field technicians who agreed to participate in the program were allowed to use TWC vehicles to commute to their initial work assignment directly from their home each morning, and return directly to their home from their last assignment at the end of the day. TWC's Statement of Undisputed Facts [53-1], ¶¶7, 10.

Beecher asserts that he and the other members of the purported class were not paid for work they performed prior to the start of their shift ("pre-shift work"), for the time spent

---

[3] The Agreement sets forth guidelines and restrictions regarding the use of the company vehicle, which is described as the employee's "vehicle take-home privilege". Id.

commuting to their first assignment and returning home at the end of the day ("commute time"), and for work performed after their shift was over ("post-shift work"). First Amended Complaint [42], ¶25.

**Commuting Time**

Beecher and the other proposed class members would drive the TWC van from their homes in the morning to their first assignment. They would drive directly home from their last assignment. They were not allowed to conduct any personal business or have unauthorized passengers while using the TWC van. See Employee Agreement ([53-20], p. 7 of 17); SFH Guidelines (id., p. 10 of 15, ¶10).

Beecher argues that because they were not free to use the TWC van for personal business, they must be compensated for their commuting time pursuant to NYLL §§190 *et seq*. and 160 *et seq*. First Amended Complaint [42], ¶¶ 47-55. Section 190 is a definitional section. The specific subsections cited by Beecher in support of Count 1 are §198(1-a) and §663(1), which provide for liquated damages and reasonable attorneys' fees if an employee is paid less than he or she is entitled. He also cites NYLL §160(3), which provides that a "day's work" is eight hours.[4]

Beecher's claim in Count 2 is related to his claim in Count 1, in that he seeks overtime wages because the additional time attributed to commuting and the associated tasks resulted in his working more than 8 hours in a single day. Beecher asserts this claim pursuant to

---

[4] Although not cited in Count 1 of the First Amended Complaint, plaintiff's motion papers also rely upon NYCRR §142-2.1(b), which states: "The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee." Plaintiff's Memorandum of Law [67], p. 16.

NYLL §§650, 663 and N.Y.C.R.R. 142-2.2. First Amended Complaint [42], ¶¶56-64. Section 650[5] is definitional and §663[6] merely authorizes a civil action.

Section 142-2.2 provides:

"An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate *in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended*; provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (4) of such act, overtime at a wage rate of one and one-half times the basic minimum hourly rate."

(Emphasis added).

**Pre- and Post-Shift Work**

Beecher argues that before driving to their first job site every member of the proposed class must: (1) boot up a digital device to log into the WorkAssure software to find out where their first job is; (2) bring their laptop, signal meter and phone to the car; and (3) perform a safety check on the vehicle. Transcript of Oral Argument [71], p. 39.[7]

---

[5] NYLL §650 allows for the creation of a minimum wage.

[6] The only subsection cited by plaintiff Beecher is §663(1), which merely authorizes a civil action: "If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee and the employer to work for less than such wage shall be no defense to such action."

[7] Beecher had originally identified several other tasks, such as fueling the vehicle, conducting an inventory and other items which would have taken additional time to accomplish. First Amended Complaint [42], ¶35. At oral argument, plaintiffs scaled back their claims as to what the purported class members would have to do on a daily basis. *See* Transcript [71] at p. 39.

Beecher acknowledged that bringing the equipment to and from the truck could be accomplished when he walked to and from the truck, and did not require a separate trip. Beecher Deposition [53-23], p. 44 of 98.[8] Beecher claims that getting a signal on his laptop to access WorkAssure could take between one and five minutes. Id., p. 254. It would then take him less than a minute to access WorkAssure. Id., p. 255. The safety inspection only required a walk around the truck taking about a minute, "maybe two". Id., p. 251. He also claimed that it would take about ten minutes to "route" his first job and take an inventory of the equipment on the truck. Id., p. 256.

According to Beecher, post-shift work included bringing his laptop, phone, signal meter, and leak detector from the van into his home and plugging then into a charger. Id., p. 174-75. He could transport all of the equipment with him as he walked from the van to his home. Id., p. 175. Transporting the equipment and plugging it into the charger would take him "five minutes at most". Id.

**Individual Plaintiffs' Lunch Claims**

Thirty minutes were automatically deducted from the plaintiffs' time records as uncompensated lunch time. First Amended Complaint [42], ¶44. Plaintiffs allege that on some occasions they would continue to work through lunch or their lunch break would be interrupted by the need to travel to their next appointment. Id., ¶46.

In Counts 3 and 4, all four individual plaintiffs assert claims pursuant to NYLL §§190, 160, 198(1-a), 663(1) to be compensated for the time when their lunch break was interrupted

---

[8]   Because limited excerpts of the deposition transcripts are attached to various documents in the record (sometimes multiple documents attaching different excerpts of the same deposition), page citations relating to deposition testimony refer to the ECF page of the exhibit and not of the original deposition transcript. Because ECF page numbers were inexplicably not produced when the excerpts of the Dueringer Deposition were filed [53-24], page references to Mr. Dueringer's testimony are to the original page of the deposition transcript.

by work. They also cite §162(2), which provides that any employee who works a shift greater than 6 hours is entitled to a lunch (or meal) break of at least 30 minutes. In addition, because this additional time would result in extending their workday beyond 8 hours, they seek overtime wages pursuant to NYLL §650 and 12 N.Y.C.R.R. §142-2.2.  First Amended Complaint [42], ¶¶65-84.

In Counts 5 and 6, plaintiffs Beecher, Dueringer and Reeves (but not Wilson) assert similar claims to be compensated for the interrupted lunch breaks under the wage and overtime provisions of the FLSA, 29 U.S.C. §§206 and 207 *et seq*.  First Amended Complaint [42], ¶¶85-107.

TWC seeks summary judgment as to all of plaintiffs' claims.

## ANALYSIS

**A. Summary Judgment Standard**

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

**B. Proposed Class Claims**

Essentially, Beecher's proposed class claims seek compensation for the time commuting to and from work, and for the tasks associated with using a company vehicle for that commute. TWC argues that the NYLL follows the FLSA framework with respect to these issues. TWC's Memorandum of Law [53-29], p. 13. In response, plaintiff Beecher argues that the NYLL does not "necessarily" follow the FLSA, and that the NYLL can be more protective than the FLSA. Plaintiffs' Memorandum of Law [67], p. 12.

It is clear that Beecher's claim for compensation for commute time would fail if brought under the FLSA. Like the NYLL, the FLSA was enacted to give "specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive [a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." Barrentine v. Arkansas-Best Freight Systems Inc., 450 U.S. 728, 739 (1981). However, an employer is not required to compensate an employee for all of the employee's time that is associated with work. Kavanagh v. Grand Union Company, Inc., 192 F.3d 269, 272 (2d Cir. 1999). The FLSA's implementing regulations specifically provide that time spent commuting is not compensable under the FLSA[9]: "An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime." 29 C.F.R. §785.35.

Thus, it is well settled that under the FLSA, the PPA and the ECFA, time spent commuting to and from the work site is generally not compensable. Kavanagh, 192 F.3d 269, 271–

---

[9]   The FLSA was modified by the Portal-to-Portal Act of 1947 ("PPA") and the Employer Commuter Flexibility Act of 1996 ("ECFA") to address issues relating to compensation and commuting. *See* Colella v. City of New York, 986 F. Supp. 2d 320, 337 (S.D.N.Y. 2013).

72 (employers are not required to compensate employees for their normal travel between home and work); Burton v. Hillsborough County, Fla., 181 Fed. App'x 829, 834 (11th Cir. 2006) ("'Normal travel from home to work whether at a fixed location or at different job sites is not worktime because it is an incident of employment, and is therefore not compensable").

This is true even when the employee is using an employer's vehicle for the commute. See Colella, 986 F. Supp. 2d at 338 ("The ECFA's language states that where the use of the vehicle is subject to an agreement on the part of the employer and the employee, [and the use of such vehicle for travel is within the normal commuting area for the employer's business,] it is not part of the employee's principal activities and thus not compensable"); Manners v. State, 285 A.D.2d 858 (3rd Dept. 2001) ("time spent by an employee commuting to and from work, even in an employer-provided vehicle, is not compensable); Singh v. City of New York, 524 F.3d 361, 369 (2d Cir. 2008) ("The ECFA exempts employers from compensating employees for the use of an employer's vehicle for travel (and for activities incidental to that use) so long as the travel is within the normal commuting area for the employer's business and the use of the vehicle is subject to an agreement between the employer and the employee").

Beecher argues that his commuting time is compensable because while driving to and from the work sites in the TWC van he cannot conduct personal business or have passengers. Plaintiffs' Memorandum of Law [67], p.17. This argument has been rejected:

> "Plaintiffs also argue they should be compensated for their time commuting because they were subject to Defendants' strict rules when operating their FDNY vehicles. Plaintiffs were only permitted to use their vehicles for official FDNY business, could not make any personal stops during their commutes, and were not allowed to transport passengers. Accordingly, Plaintiffs claim they were under Defendants' full control while operating their vehicles and thus should be compensated. But this argument is a non-starter because Plaintiffs fail to cite any authority or even to explain why such restrictions should alter the analysis under the ECFA. At the same time, case law holds that the exact types of restrictions

> decried by Plaintiffs are permissible. Chambers v. Sears Roebuck & Co., 428 Fed.Appx. 400, 411–13 (5th Cir.2011) ('Nothing in the statutory scheme requires, or even implies, that such conditions on an employee's use of a company car, including the transportation of parts or tools, can transform an otherwise non-compensable commute into a compensable one'); Rutti, 596 F.3d at 1052–54. The Court agrees that Defendants' restrictions on the use of their company vehicles does not affect their ability to claim exemption under the ECFA."

Colella, 986 F. Supp. 2d at 340.

Although Beecher argues that the NYLL can provide greater protection than the FLSA, he points to no authority in which time for commuting to and from work, even while using an employer's vehicle, was found to be compensable under New York State law. In cases where a plaintiff asserted a claim for commute time compensation under both the FLSA and the NYLL, the courts have disposed of the claims using the FLSA analysis. For example, in Bethune v. TW Telecom Holdings, Inc., 2011 WL 856173 (S.D.N.Y. 2011), the plaintiff sought to bring class claims under both the FLSA and NYLL for "unpaid wages based on work he performed while commuting and during his meal and rest periods". Id.,*1. The Court dismissed the commute time claim under the FLSA analysis without further mention of the NYLL. Id.,*3.[10]

Similarly, in Henderson v. NJK Contractors, Inc., 2015 WL 1966355 (E.D.N.Y. 2015), the plaintiff asserted various claims under both the FLSA and NYLL for various things, including for time spent traveling between the employer's shop and various job sites. Without distinguishing the FLSA from the NYLL, the court held that "normal travel from home to work is not worktime . . . and not compensable". Id.,*22. The Court went on to find that the travel between the employer's shop and the various work sites - not the case here - was compensable under both

---

[10] The court dismissed plaintiff's claim to be compensated for work performed during meal and rest periods without prejudice, because unlike the commute compensation, plaintiff may be entitled to compensation for work performed during breaks. Id. The court allowed the plaintiff to replead that claim because he had not identified the type of work performed during meal and rest periods. Id.

the FLSA and the NYLL. Id.,*53.[11] Cases such as <u>Henderson</u> and <u>Bethune</u> implicitly hold that the NYLL follows the FLSA with respect to whether ordinary commute time is compensable.[12]

Additionally, the New York State Department of Labor ("DOL") typically refers to the FLSA and the regulations promulgated thereunder when interpreting an employee's rights for compensation for commute time under the NYLL. In an Opinion Letter dated August 10, 2010 (RO-09-0190), the DOL was asked about the obligations of employers to pay "traveling employees" under various scenarios. The DOL referred to N.Y.C.R.R. §142-2.1 which relates to the payment of wages including those for "time spent in traveling to the extent that such traveling is part of the duties of the employee", but stated that this provision is interpreted "in line with the federal regulations regarding travel time under the [FLSA]". DOL RO-09-0190, p. 2. Similarly, when asked if §142-2.1 required compensation where an employee was required to travel to "another store outside of the employee's usual location" and "to and from the airport and while traveling on the plane, car, bus, or train", the DOL again referred to 29 C.F.R. §785.53 [the PPA]. <u>Id.</u> [13]

---

[11] The court in <u>Henderson</u> also noted that the FLSA preempts state "claims directly covered by the FLSA", thus "[c]onsequently, the NYLL . . . only applies to plaintiff's overtime claims to the extent that they are not preempted by the FLSA". Id., *37. In this regard, the court found that the NYLL, which has a six year statute of limitations, would apply only to the claims beyond the FLSA's three years limitations period. <u>Id.</u> TWC has not asserted a preemption argument in this case.

[12] Conversely, plaintiffs cite no case in which a court held that the NYLL provided greater protection than the FLSA (and its amendments) with respect to claims for commute time. Also, as discussed above, here the proposed class claims for compensation for commute time and the claim for overtime wages are intertwined. N.Y.C.R.R. §142-2.2, the New York statute upon which Beecher relies for overtime pay, expressly states that overtime pay is to be paid "in the manner and methods" as provided the FLSA. Following the manner and methods of the FLSA, overtime pay would not be awarded for the time spent commuting to and from work.

[13] <u>Albrecht v. Wackenhut Corporation</u>, 2009 WL 3078880 (W.D.N.Y. 2011) (Telesca, J.) is also analogous. There, plaintiff had asserted claims under both the FLSA and NYLL for time spent "arming up and checking through security and arming down" at a nuclear power plant. Judge Telesca found that the arming up and arming down activities were *de minimus* under the FLSA/PPA, dismissing the claims without further analysis under the New York Minimum Wage Act. <u>Id.</u>, *9-12.

In an opinion letter dated March 10, 2009 (RO 09-0023) [67-11], the DOL responded to an inquiry as to whether travel time from one job site to another job site was compensable. The DOL distinguished the travel between work sites from travel commuting to and from work "at the beginning and end of the workday" which it deemed to be non-compensable because the employee was free to engage in personal pursuits and activities. Although the DOL said that it was not bound by the FLSA and that it can protect employees to a greater degree than under federal law, it ultimately cited 29 C.F.R. §785.6 [a regulation promulgated under the FLSA] regarding whether an employee is "on-call" while travelling between work sites.

Finally, in an opinion letter dated May 7, 2010 (RO-10-0068) [53-4], the DOL responded to an inquiry by a technician who drives a company owned truck that is parked at a rental space (paid for by the employer). The employee was required to travel from his home to the rental space to get the truck each morning, and then travel from the rental spot to his first job assignment. The DOL stated that because he reports to the company's rented space to pick up the truck and travels to a job site from there, the travel time between the rental space and the job site is compensable. In doing so, the DOL again stated that it interprets 12 N.Y.C.R.R. §142-2.1 and NYLL §191 "in line with the federal regulations for travel time". Id., p. 2. Further, the DOL cited regulations promulgated under the FLSA (29 C.F.R. ¶785.38) in making this determination. Id.

These DOL opinion letters, along with Henderson and Bethune, suggest that the NYLL follows the FLSA with respect to whether time commuting to and from work is compensable under the circumstances presented in this case. In light of the above, I find that the NYLL follows the FLSA, the PPA and the ECFA with respect to whether employees are entitled to compensation for the normal time commuting to and from work, regardless of whether an employee utilizes an employer's vehicle for that purpose. Therefore, I conclude that TWC is entitled to summary

judgment with respect to Beecher's proposed class claim seeking compensation for time commuting from his home to his first assignment, and from his last assignment to his home.

I also find that the pre- and post-shift tasks which Beecher has identified as associated with using TWC's vehicle for commuting purposes are incidental to the commute, and therefore are likewise non-compensable. As discussed in Colella, the legislative history for the ECFA provides guidance for determining whether activities are non-compensable because they are incidental, preliminary, or postliminary to exempt commute time:

> "Activities which are merely incidental to the use of an employer-provided vehicle for commuting at the beginning and end of the workday are similarly not considered part of the employee's principal activity or activities and therefore need not be compensable. It is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting. Communication between the employee and employer to receive assignments or instructions or to transmit advice on work progress or completion, is required in order for these programs to exist. Likewise, routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable. Merely transporting tools or supplies should not change the noncompensable nature of travel."

Colella, 986 F. Supp. 2d at 342–43.

The pre- and post-shift tasks identified by Beecher fall squarely within the description of tasks found to be non-compensable as incidental to the use of TWC's vehicle in the SFH Program. Based on the above, I recommend that summary judgment be granted in favor of TWC with respect to the proposed class claims asserted in Counts 1 and 2 of the First Amended Complaint.

**C. Interrupted Lunch Claims**

The individual plaintiffs assert claims to be compensated for those occasions on which their lunch time was interrupted by work-related activities. TWC argues that these claims are too speculative for relief to be granted. TWC's Memorandum of Law [53-29], p. 22.

It is undisputed that at times the plaintiffs were required to "punch out and back in" for their lunch period. TWC's Statement of Undisputed Facts [53-1], ¶56. At some point, TWC's policy changed so that instead of punching in and out, 30 minutes would be automatically deducted from plaintiffs' time record each day as a lunch break. TWC argues that pursuant to its policy, employees were required to take the lunch break, and that if employees did not do so they were supposed to inform their supervisor, who could ensure that they were paid for the time. Id., ¶¶57-61.

Plaintiffs acknowledge that the TWC policy stated that employees were to take lunch breaks, and that the Field Technician had discretion as to when to "status themselves" on a meal break. Plaintiffs' Statement of Undisputed Facts [67-1], ¶58. Plaintiffs also acknowledge that TWC's written policy precluded them from performing work during a meal break, but argue that because of assignment schedules and the way "field tech job performance" was evaluated, they sometimes did not take a lunch. Id., ¶59.

Plaintiffs do not identify any specific instance in which they were prevented from taking a lunch. TWC argues that plaintiffs also cannot establish the extent of any intrusion into their lunch break. TWC's Memorandum of Law [53-29], p. 20. TWC cites Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 64 (2nd Cir. 1997), holding that in order to prevail on a lunch interruption claim, an employee must demonstrate that the time was spent "predominantly for the benefit" of the employer. TWC asserts that plaintiffs have no evidence that

the alleged intrusions were no more than *de minimus* interruptions. TWC's Memorandum of Law [53-29], p. 20.

When confronted with a motion for summary judgment, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation". Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir.2011). "The mere existence of a scintilla of evidence in support of the plaintiffs' position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiffs." Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir.2004).

Here, plaintiffs testified that they could not identify a specific day in which they worked through lunch. *See*, *e.g.*, Beecher Deposition [53-23], p. 23 of 85.[14]  Plaintiffs appear to acknowledge that they have no specific records of when and how often such interruptions occurred, but they attribute this paucity of evidence to a failure of TWC to maintain accurate records. Plaintiffs' Memorandum of Law [67], p.24.  Thus, plaintiffs assert that then need only present "sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference". Id. citing Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2nd Cir. 2011).

While plaintiffs claim that they occasionally advised their supervisors about an inability to take a lunch break, they admit that they often did not tell their supervisors when they did not take a lunch or when their lunch was interrupted. Beecher Deposition [67-4], p. 38 of 98; Reeves Deposition [53-25], p. 24 of 109.  They also testified that on occasions when they did advise their supervisor that their lunch was interrupted, their time records *may* have been corrected but they do not recall checking to see if that was the case. Beecher Deposition [67-4], p. 20 of 98; Reeves Deposition [53-25], p. 21 of 109; Wilson Deposition [53-26], p. 23 of 32.

---

[14]    Indeed, the plaintiffs testified that they often took lunch breaks greater than 30 minutes. Beecher Deposition [67-4], p. 32 of 98; Wilson Deposition [53-26], p. 28 of 32; Dueringer Deposition [53-24], pp. 162-63.

Plaintiffs also admit that they occasionally forgot to "status out" for a lunch break, so that even if the TWC computer records did not reflect that they took a lunch break, it did not mean that they did not get a lunch break that day. Dueringer Deposition [53-24], p. 47; Beecher Deposition [67-4], p. 22 of 98. Plaintiffs stated that the only way to determine whether a lunch break was taken was for the technician to remember what he did on a particular day. Dueringer Deposition [53-24], p. 49; Wilson Deposition [53-26], p. 27 of 32. Beecher acknowledged that it would be "tough" for him to recall any details as to how often this happened because it occurred so long ago. Beecher Deposition [67-4], p. 19 of 98.

Plaintiffs have not articulated how they could establish those instances when their lunch break was interrupted so pervasively that the time was spent predominantly for the benefit of the employer as required under Reich. For example, Beecher testified that on occasion he would receive messages on his computer from his supervisor during a lunch break, but that "it would be a complete weird guess" as to how often that happened. Id., p. 28 of 98. He also stated that these exchanges could last anywhere from a few seconds to ten minutes. Id., pp. 29-31 of 98.

Based upon the plaintiffs' testimony, the inability to establish the frequency and extent of any lunch time interruptions was not primarily due to unreasonable record keeping practices by TWC, but because of a failure on the part of the plaintiffs to consistently record lunch breaks and/or lunch break interruptions. In any event, even under circumstances where record keeping practices are deficient, a plaintiff must present more than the uncertain and unverifiable information presented in this case. Plaintiffs have not presented "sufficient evidence" from which the amount and extent of any uncompensated work could be determined "as a matter of just and reasonable inference", as required in Kuebel.

Here, the plaintiff have presented only anecdotal statements that "*sometimes* the company worked our schedule so much where we couldn't take a lunch", that they let their supervisors know that this was happening, but no action was taken; and that this purportedly happened at least three times a week.  PSUF [67-1], ¶¶59-62.  A very similar lunch break claim was asserted and rejected in Brand v. Comcast Corp., 135 F. Supp. 3d 713, 742 (N.D. Ill. 2015). There, the court stated:

> "Both Brand and Jackson submitted evidence that they were instructed to record a lunch break whether or not they actually took one. Accordingly, they are entitled to show the amount and extent of their unpaid work under the relaxed 'just and reasonable inference' evidentiary standard . . . . Under this standard they may rely on their recollection, but not on speculation . . . .  In fact, their recollection alone can satisfy this burden even where there is no precise corroborating documentation or records . . . . To meet his burden Brand points to his testimony that during the relevant period he only took lunch breaks 'maybe once or twice, maybe three times a month, if I was lucky' . . . . Similarly, Jackson points to his testimony that he worked '[o]ver four years, probably three years' worth' of his lunches, and '70 to 75 percent of the time lunch was interrupted' . . . . The language they use about how often they 'maybe' or 'probably' worked through lunch suggests guesswork. They point to no explanation as to how they reached their estimates nor do they point to any memory 'triggering factors' or other details providing the basis for their recollection . . . . Bare allegations and vague undocumented estimates are insufficient to survive summary judgment . . . . *see also* Joiner v. Board of Trustees of Flavius J. Witham Memorial Hospital*,* 2014 WL 3543481, at *7 (S.D.Ind.  2014) (holding that plaintiffs' assertions that lunches were interrupted 'two or three times a week' and 'practically every day' are general assertions insufficient to overcome summary judgment). Because that is all Brand and Jackson have supplied here, they have not shown that they can demonstrate the extent of the unpaid wages owed them even under the just and reasonable inference."

135 F. Supp. 3d at 742.

I find that the plaintiffs have not articulated a basis to calculate even a reasonable inference (as required under Kuebel) of the frequency and extent to which their lunch breaks were

- 16 -

interrupted sufficiently so that their activities during those lunch breaks were predominantly for the benefit of TWC, as required under Reich. For this reason, TWC is entitled to summary judgment dismissing the individual plaintiffs' claims seeking compensation for lunch time interruptions.

**CONCLUSION**

For these reasons, I recommend that TWC's motion for summary judgment [53] be granted, and that plaintiff Beecher's motion for class certification be denied as moot. Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by September 8, 2016 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 22, 2016

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge